**Gary CULLEN and Sharon Cullen, Plaintiffs**

v.

**TRUCK LEASE CORP. and Stephen J. Puffer Defendants**

**No. 03 CIV. 5199(SCR).**

United States District Court, S.D. New York.

Dec. 8, 2004.

Norman M. Block, Esq., Hawthorne, NY, for Plaintiffs.

Vincent P. Crisci, New York, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

### I. Background

The underlying action between the above-mentioned parties was commenced in July 2003 to recover damages for personal injuries from an automobile accident. The parties ultimately settled their dispute.

The instant dispute is between Gary and Sharon Cullen (the "Plaintiffs") and Legion Insurance and the New York Liquidation Bureau, and its adjusters GAB Robins North America, Inc. (collectively "Legion"). The Plaintiffs submitted an order to show cause to compel Legion to unconditionally approve the settlement, determine the amount of any workers compensation lien, and pay the Plaintiffs' share of the attorneys fees and litigation costs expended for its benefit in reaching the settlement in this case.

Legion is the workers compensation carrier that previously paid the medical expenses and lost wages of Mr. Cullen. Legion has a lien on the Plaintiffs' settlement

based upon the amounts it has paid and its equitable share of the attorneys fees and litigation expenses incurred by Mr. Cullen in resolving the underlying action.

The disputes before the court are: (1) whether Legion can refuse permission to disburse moneys held in escrow to satisfy the lien for past payments when it has admitted that there is no lien because its equitable share of expenses and fees exceeds the lien, and (2) whether the excess of that lien should be paid now or 35 years in the future; and, if in the future, at present value or its future value. Not surprisingly, there also appears to be considerable disagreement between the parties about (3) the amount of Legion's equitable share of the expenses and fees, the amount that share should be reduced by the amount of its lien for past medical expenses, and the overall amount it owes (or is owed).

In its initial memorandum of law, Plaintiffs requested that the court order Legion to pay $12,254.81 plus interest and costs. In its Opposition Memo, Legion provided an expert analysis that, according to Legion, demonstrated that not only did it not owe the Plaintiffs $12,254.81, *it was owed* $4,873.33. In its Reply, the Plaintiffs' makes a claim that is even more ambitious than it was in its initial brief, specifically arguing that Legion's expert report, when corrected for an obvious yet simple mistake, actually demonstrates that the Plaintiffs are owed $28,133 in fresh money.

## II. Analysis

### A. Background

New York's Workers Compensation Law governs the rights and obligations of employees and compensation carriers with respect to actions arising out of injuries caused by third-party tort-feasors. *See* N.Y. Work. Comp. § 29. A claimant has the first right to bring a third-party action and, while undertaking such an action, may continue to receive compensation benefits. *See* N.Y. Work. Comp. § 29(1). When a claimant recovers in a third-party action, the compensation carrier is granted a lien on the proceeds from the third-party action that is equal to the amount of past compensation it has paid, with interest. *See id.* This lien, however, is subject to a deduction in the amount of the carrier's equitable share of costs and attorney fees incurred by the claimant in the third-party action. *See id.*

When a workers' compensation claimant recovers damages in a third-party action, the compensation carrier's equitable share of litigation costs incurred by the claimant is apportioned on the basis of the total benefit that the carrier derives from the claimant's recovery. *Kelly v. State Insurance Fund,* 60 N.Y.2d 131, 468 N.Y.S.2d 850, 456 N.E.2d 791 (1983). The carrier's total benefit is comprised of the amount of past benefits paid (or the amount of the carrier's lien) plus the present value of estimated future benefits to the claimant which the carrier will not have to pay because of the claimant's recovery. *See id.* at 852, 456 N.E.2d at 793. In short, this case raises the question of what obligation, if any, the carrier has to pay the claimant additional funds when the amount of the carrier's equitable share of attorney fees exceeds the amount of its lien.

It is important to note, however, that there is an additional factor to consider in an automobile accident case such as this. Workers Compensation Law precludes carriers from asserting liens against Workers Compensation benefits paid or payable in lieu of first party no-fault benefits that another insurer would have otherwise been obligated to pay under the no-fault automobile insurance law. *See* N.Y.

WORK. COMP. § 29(1–a). New York's no-fault automobile insurance law eliminated the right to sue for "basic economic loss," which is economic loss up to $ 50,000, and in its place mandated insurance coverage for the payment of first-party benefits, to reimburse a person for basic economic loss on account of personal injury arising out of the use or operation of a motor vehicle in this State. *See Vinson v. Berkowitz,* 83 A.D.2d 531, 532, 441 N.Y.S.2d 460 (1981). This suggests, as Plaintiffs argue, that the carrier has no entitlement to a lien on the first $50,000 of the Plaintiffs' recovery in this case.[1]

### B. Should 'Fresh Money' Be Awarded?

The central legal dispute between the parties is whether a workers compensation carrier can, under New York law, be compelled to contribute "fresh money" to a liability settlement beyond the reduction of its lien to zero, even if the parties were to agree that accurate calculations suggested that the carrier owed more for attorneys fees and litigation expenses than the amount of the lien. The parties appear to agree that a decision granting the Plaintiffs fresh money would be noteworthy, and perhaps unprecedented. Nevertheless, the court finds that there is no basis in law or logic not to award fresh money in circumstances such as these.

In *Wood v. Firestone Tire & Rubber Co.,* the New York Supreme Court faced a situation in which the carrier's equitable share of expenses exceeded the amount of its lien. 123 Misc.2d 812, 475 N.Y.S.2d 735 (1984). Legion argues that this case rep-resents "substantial judicial precedent" for the proposition that a carrier cannot be asked to contribute fresh money, even when its total future benefit exceeds its lien.[2] For whatever reason, Plaintiffs *conceded* during oral argument that fresh money was not awarded in *Wood,* but ex-plains that outcome as resulting from the plaintiff's failure to seek recovery of the excess in that case. This court's analysis of *Wood* is necessarily based on the opinion of the court in that case, and the language of that opinion clearly suggests that fresh money is not only appropriate but required in cases such as this.

First, the court in *Wood* made no state-ment denying the Plaintiff fresh money, even though the court calculated the carri-er's equitable share as exceeding, in dollar terms, its lien against the Plaintiff. More-over, and most importantly, when the court did address the fact that the carrier's offset exceeded its lien, it insisted that the carrier pay its fair share, not its fair share up to the amount of its lien. Specifically, the court stated:

> "The conclusion herein, that the offset exceeds the lien, is not abhorrent to this court. The factual pattern occasioning the large settlement is based on a severe injury to an 18–year–old youth, totally disabling him and making him a candi-date for ongoing seizure problems dur-ing his normal life expectancy. *The re-spondent should contribute to attorney's fees in proportion to the total benefits it derived from the recovery in settlement.* The equitable apportionment exceeds the lien because the benefits the carrier

---

1. Indeed, Plaintiffs' argue that the major er-ror in Legion's calculations is that it errone-ously allowed Legion to have a lien on the first $50,000 of the Plaintiffs' recovery. Plaintiff arrives at its estimated $28,133 enti-tlement after adjusting Legion's calculations by this amount.

2. The attorney for Legion claims that he was the attorney for the carrier in *Wood,* and therefore has first-hand knowledge that fresh money was not awarded.

receives, through the extinguishment of future payments it was otherwise required to make, are substantial."

475 N.Y.S.2d at 740 (emphasis added). The court specifically confronted the fact that the carrier's offset exceeded its lien, but explicitly refused to alter its determination that the carrier pay its full equitable share based on the total benefit it received from the plaintiff's settlement. Far from being precedent for the proposition that fresh money should not be awarded, *Wood* suggests exactly the opposite.[3]

Not only does existing legal precedent not preclude the awarding of fresh money, logic suggests that fresh money should be awarded in cases such as these. The thrust of *Kelly* and *Wood* is to ensure that the carrier pay its fair share of litigation costs from a claimant's settlement or judgment in a third-party action. It makes no meaningful difference if this outcome is achieved by the carrier transferring additional money to the claimant, the claimant transferring money to the carrier, or by the court simply extinguishing the lien.

Moreover, one might expect the carrier's equitable share to exceed its lien when, *ceteris paribus*, attorneys fees and litigation costs are higher and the amount of the lien is lower. One might expect higher attorneys fees when claimants earn larger third-party judgments or settlements, or when third-party claims are more complicated. One might expect smaller liens when less time has passed between the injury to the claimant and the conclusion of the third party lawsuit. The court cannot conceive of any persuasive justification for imposing a rule that discourages suits by claimants who have suffered greater injuries or whose claims are more legally complicated, while encouraging claimants to delay prosecuting their third-party actions, thereby making it more difficult for courts and litigants to appropriately resolve third-party claims.

For these reasons, fresh money should be awarded where, in cases such as this one, the carrier's offset exceeds its lien.

## C. How Much Fresh Money Should Be Awarded?

To date, the parties have engaged in extended discussions regarding the amount of fresh money that the Plaintiffs would be entitled to in this case, assuming the court was willing to award it. The parties appear to have had considerable difficulty settling on figures for the total carrier benefit, discount rate to apply in calculating present values of future benefits, and other figures necessary to the *Kelly* calculation.

The court finds that the Affidavit of Legion's expert, Thomas Hutson, provides the most reliable basis upon which to determine the appropriate amount of fresh money in this case. In its reply papers, Plaintiffs accepted Mr. Hutson's report, with a few qualifications. We agree with the Plaintiffs that Mr. Hutson miscalculat-

---

**3.** Legion cited two other cases as well. *Donaldson v. Ryder Truck Rental & Leasing*, 189 Misc.2d 750, 737 N.Y.S.2d 783 (2001) does not support Legion's position. Fresh money would have been an issue in that case only if the court had decided that the claimant was entitled to an equitable share of litigation costs incurred in recovering the value of future medical benefits that the carrier otherwise would have paid. But finding that the amount of such benefits could not be determined with reasonable certainty, the court decided not to include them. *See id.* at 754, 737 N.Y.S.2d 783. In *Wimette v. Marq Packaging Systems*, the court did, consistent with Legion's argument, refuse to grant fresh money even though the carrier's share of expenses exceeded the amount of its lien. But this County Court decision from the State of Washington is not binding on this court and its reasoning is not, for reasons discussed, persuasive.

ed the carrier lien when he failed to deduct $50,000 pursuant to *Vinson.* The court, however, finds Mr. Hutson's discount rate of 5.5% to be reasonable, and does not believe the Plaintiff has provided sufficient

basis to disturb Mr. Hutson's calculation of estimated future medical payments.

Therefore, the court finds the following:

Attorney's Fees & other costs = $141,151.17
Total Recovery = $415,000.00
Total Carrier Benefits = $113,951.94 ($163,951.94—$50,000)

Applying the *Wood* formula,[4] the court finds that Legion's Equitable apportionment equals $38,757.71. Legion's lien in this case equals $60,637.21 (gross)—$50,000. This results in a net lien of $10,637.21. Therefore, Legion's equitable share of attorney fees and costs exceeds its lien by **$28,120.50** ($38,757.71–$10,637.21).[5]

### III. Conclusion

Based on the foregoing, the court awards the Plaintiff's $28,120,50.[6]

The clerk of the court shall file a final judgment.

It is so ordered.

---

4. Attorney's Fees & Costs / Total Recovery = Equitable apportionment / Total Carrier Benefits. *See Wood,* 475 N.Y.S.2d at 740.

5. As such, the court is hereby issuing a judgment calculated in present value dollars and ordering Legion to pay the amount it owes now. Mr. Hutson's calculations were made in present value terms and it would make little sense to issue a judgment requiring future payments (calculated at future value). Moreover, given that Mr. Hutson has utilized a reasonable discount rate, Legion should, by definition, be indifferent to paying its equita-

ble share at its present value or in a stream of future payments.

6. Correspondence between the attorneys indicates that Legion's lien continued to increase after the parties May 2004 settlement. The court declines to award any additional interest accrued or attorneys fees spent since the settlement in this case in part to offset any additional (and expected) increases in Legion's lien during the pendency of this third party action.